UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA GOODWIN,

        Plaintiff,

v.

COMERICA, INC., et al.,

        Defendants.
_____/

CIVIL ACTION NO. 06-12806

DISTRICT JUDGE NANCY G. EDMUNDS

MAGISTRATE JUDGE DONALD A. SCHEER

# REPORT AND RECOMMENDATION

**I.** **RECOMMENDATION**:

I recommend that Plaintiff's Motion to Reverse the Administrator's Decision be Denied, and that Defendants' Motions for Judgment on the Administrative Record be granted.

**II.** **REPORT**:

    **A.** **Procedural History**

Plaintiff's Complaint was filed in the Circuit Court for the County of Wayne, State of Michigan, on May 19, 2006. Defendants filed their Notice of Removal to this court on June 23, 2006. Defendants Liberty Mutual Insurance Company and Comerica, Inc., filed their Answers on June 28, and July 5, 2006, respectively. On August 10, 2006, the court entered a Scheduling Order calling for the filing of cross motions to reverse or affirm the administrator's decision.

Plaintiff's Motion to Reverse the Administrator's Decision was filed on February 20, 2007. Defendants Liberty Mutual Insurance Company and Comerica, Inc., filed separate Motions for Entry of Judgment on the Administrative Record on the same date. Comerica,

Inc. filed a Response to Plaintiff's Motion on March 13, 2007. Liberty Mutual Insurance Company filed its Response to Plaintiff's Motion on March 16, 2007. Plaintiff did not file a Response to either of the Defendants' Motions.

The cross motions are before the magistrate judge for Report and Recommendation, pursuant to an Order of Reference entered on March 1, 2007.

**B.     Applicable Law and Standard of Review**

The Scheduling Order entered by the district court judge on August 10, 2006 provided that these proceedings will be conducted in accordance with the guidelines set forth by the Sixth Circuit Court of Appeals in Wilkins v. Baptist Health Care System, Inc., 150 F3d 609, 619 (6th Cir. 1998). That decision recognized the determination of the Supreme Court, in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989), that the standard of review for an ERISA plan administrator's denial of benefits is *de novo,* "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Wilkins, 150 F.3d at 613. Where the benefit plan gives such discretion to the plan administrator, "the highly deferential arbitrary and capricious standard of review is appropriate . . .." Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). Under either standard, the court's review is confined to the record that was before the plan administrator. Miller v. Metropolitan Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991).

In the case at bar, the parties agree that the benefit plan affords the plan administrator discretionary authority to determine eligibility, and that the arbitrary and capricious standard of review is appropriate.

C.  **Factual History**

Plaintiff Sonya Goodwin was a long term employee of Defendant Comerica, Inc. ("Comerica"). As a benefit of that employment, she was a participant in plans for both short term and long term disability benefits. Comerica provided for long term disability payments through a policy of disability insurance with Liberty Life Insurance Company of Boston ("Liberty Life"), an affiliate of Liberty Mutual Insurance Company ("Liberty Mutual"). In addition to providing long term disability benefits under the policy, Liberty Life provided administrative services to Comerica with respect to its short term disability plan. Those services included claims processing, investigation to determine eligibility for benefits, and the making of recommendations to Comerica regarding the disposition of claims and administrative appeals. To the extent that a plan participant qualified for benefits under the short term disability plan, those benefits were paid by Comerica.

To qualify for short term disability benefits, a Comerica plan participant must establish that "because of injury, sickness, disease, pregnancy and/or complications of pregnancy, the employee cannot perform each of the essential duties of his/her occupation." Further, the employee must demonstrate that he/she is under the regular care of a licensed health care provider and is complying with a recommended course of treatment.[1]

---

[1] The plan document provides that "[t]he employee is not considered disabled, or under a disability, unless he/she is under the regular care and treatment of a licensed healthcare provider, who is practicing within the scope of his/her license during the entire period of disability. Furthermore, to be eligible for short term medical leave, an employee must comply with the course of reasonable treatment recommended to resolve the disability."

Plaintiff began her employment with Comerica in 1979. In 2004, she sought treatment from Dr. Chandrika Iyer, M.D. for pain in her fingers, hands and wrists. In late 2004, Goodwin was referred by Dr. Iyer to Neal Alperin, M.D., D.D.S., a board certified internist and a fellow of the American College of Rheumatology. In May 2005, Plaintiff held the position of Senior Trust Analyst. It is uncontested that the use of her hands was critical to the performance of her job duties. After working through May 8, 2005, Plaintiff filed for short term disability benefits. Her claim was supported by a "Restrictions Form," submitted by Dr. Alperin on May 17, 2005. The form stated that Plaintiff "has severe active RA [Rheumatoid Arthritis] can not do any work duties at this time." (AR-LL-190). Attached to the form were copies of letters written by Dr. Alperin to Dr. Iyer, and a physical capacities form limiting Plaintiff's capacity for sitting and standing to one half hour each, and indicating that she could walk only for short distances. (AR-LL-0191-0197). Restrictions forms submitted for June, July and August 2005 reflected the same diagnosis.

In September 2005, Liberty Mutual secured a peer review analysis of Plaintiff's medical records by Dr. David S. Knapp, who was board certified in Internal Medicine/Rheumatology. Based upon his review of the records, and a discussion of Plaintiff's case with Dr. Alperin, Dr. Knapp concluded that the diagnosis of Rheumatoid Arthritis was not supported by the physical findings, x-rays and laboratory results. He concluded that Plaintiff's treatment plan for RA was not supported by the medical information available, and that the record failed to document objectively a physical impairment that would curtail the use of Plaintiff's hands or explain her subjective complaints. He concluded that no permanent or temporary work restrictions were supported by the medical evidence, and that Plaintiff was able to perform the functions of

4

her job description. (AR-LL-0297-0301). On September 20, 2005, following the receipt of Dr. Knapp's report, Liberty Life issued its determination disapproving Ms. Goodwin's continued receipt of benefits under the Comerica short term disability plan. The letter advising Plaintiff of the termination also explained her right to request a review of the discontinuation of benefits. (AR-LL-0293-0295).

Plaintiff initiated an appeal of Liberty Life's determination on October 18, 2005. On November 4, 2005, her counsel issued a letter containing additional medical records in support of Plaintiff's position. Goodwin's claim was then transferred to Liberty Life's Appeals Unit. (AR-LL-0003). In December 2005, Plaintiff's file and updated medical records were submitted by Liberty Life to Jefrey Lieberman, M.D., who was also board certified in Internal Medicine and Rheumatology. Dr. Leiberman reviewed Plaintiff's records and discussed her condition and treatment with Dr. Alperin by telephone. In a report on December 21, 2005 he opined that there was no objective medical evidence that Ms. Goodwin had any impairment that would prevent her from performing the duties of her occupation. (AR-LL-0030). Upon receiving Dr. Leiberman's report, Liberty Mutual informed Plaintiff's attorney by letter that the decision to terminate short term disability benefits would not be changed. The letter also explained Plaintiff's right to appeal Liberty Mutual's unfavorable decision to Comerica's Director of Benefits, in writing, within 30 days. (AR-LL-0052-53). Rather than initiating an appeal, however, Plaintiff filed this action.

### D. Analysis

#### 1. Exhaustion of Administrative Remedies

Liberty Mutual maintains in its Motion for Entry of Judgment on the Administrative Record that Plaintiff's claims for benefits under the Comerica Short Term and Long Term Disability Benefits Programs should be dismissed because she failed to pursue available administrative remedies prior to instituting this action. Section 502(a)(1)(B) of ERISA authorizes a participant in an employee benefit plan to file a civil action seeking benefits under the terms of an employee benefit plan. 29 U.S.C. §1132(a)(1)(B). It is well established, however, that a benefits applicant must exhaust available administrative remedies before seeking judicial relief. Hill v. Blue Cross and Blue Shield of Michigan, 409 F.3d 710, 717 (6th Cir. 2005); Costantino v. TRW, Inc., 13 F.3d 969, 974 (6th Cir. 1994); Baxter v. C.A. Muer Corp., 941 F.2d 451, 453-54 (6th Cir. 1991); Miller v. Metropolitan Insurance Co., 925 F.2d 979, 986 (6th Cir. 1991).

Comerica's Short Term Disability Benefits Plan provides for a three step claims process. Liberty Life makes an initial determination as to a claimant's eligibility for benefits. A claimant who is denied benefits may proceed to the second step of the process, which is an appeal procedure resulting in a decision by the appeals unit of Liberty Life. A claimant who is dissatisfied with the Liberty Life reconsideration determination may proceed to a third and final step. The claimant may submit additional evidence support the benefits claim to Comerica, the plan sponsor, and secure a final decision. (Declaration of Paula McGee, Exhibit 5-Summary Plan Description of Comerica STD Plan, at AR-LL-0240). The plan establishes a specific time limit of thirty days following receipt of Liberty Life's second

stage appeal determination within which a claimant must initiate a third stage appeal. Id. (AR-LL-0241). Plaintiff was advised of her right to appeal Liberty Mutual's determination in the December 21, 2005 letter communicating the decision on the step two reconsideration to her counsel. (AR-LL-0052). That letter further informed Plaintiff's attorney of the address to which a step three appeal should be sent, and the time limit for its submission. Id. (AR-LL-0052-0053).

Plaintiff's verified Complaint and jury Demand does not allege that she initiated a step three appeal of Liberty Mutual's step two reconsideration decision. Nor does the Brief in Support of her Motion to Reverse the Administrator's Decision contain such an assertion. On the contrary, her brief only declares that she appealed the original denial, and that she initiated this action in response to Liberty Mutual's December 21, 2005 determination. Plaintiff has filed no response to Liberty Mutual's allegation that she failed to exhaust her administrative remedies. In the absence of evidence that she did exhaust all available administrative avenues of review, or that exhaustion of those procedures would have been futile, I conclude that Plaintiff's claims in this action arising from the denial of her short term disability benefits claim should be dismissed.[2]

## 2. **Plaintiff's Substantive Claim for STD Benefits**

The parties to this action agree that the Comerica Disability Benefits Plan affords the plan administrator broad discretionary authority to determine eligibility, such that the arbitrary and capricious standard of review is appropriate. Plaintiff rightly observes that,

---

[2] Plaintiff seeks an award of long term disability benefits on the theory that denial of short term benefits prevented her from meeting the 180 day prerequisite period of disability. Because the decision to terminate her STD benefits was proper, her long term benefits claim must fail.

7

although the standard is deferential, it is not a rubber stamp for the administrator's determination. Jones v. Metro Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004). Rather, the administrator's decision must be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Glenn v. Metlife, 461 F.3d 660, 666 (6th Cir. 2006) (citing Baker v. United Mine Workers of Am. Health and Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991)). In rendering its determination, this Court must examine the quality and quantity of the medical evidence and opinion on both sides of the issue. Id.

In the case at bar, all of the medical opinions are based substantially upon the same clinical findings, diagnostic tests and laboratory analyses. Those data are contained in the medical records of Drs. Iyer and Alperin which were submitted by Plaintiff in support of her short term disability benefits claim. (AR-LL-70-199).

In the Brief supporting her Motion to Reverse the Administrator's Decision, Plaintiff emphasizes that Dr. Alperin's clinical examination of Plaintiff revealed trigger points consistent with a diagnosis of fibromyalgia. That diagnosis, however, was not included on the restrictions form submitted by Dr. Alperin in May 2005. That form listed only Rheumatoid Arthritis as a basis for an award of short term disability benefits. (AR-LL-0374). In a letter to Dr. Iyer on June 3, 2005, Dr. Alperin stated that Plaintiff "may have some element of fibromyalgia," but opined that it "may not be as much of an issue," as compared with his primary diagnosis of RA. At no point in the record did Dr. Alperin (or Dr. Iyer) suggest that fibromyalgia rendered Plaintiff incapable of performing the duties of her employment.

8

An examination of Dr. Alperin's treatment records reflects that the vast majority of clinical findings and diagnostic test results were within normal limits. The only exceptions appear to be an elevated sedimentation rate (which is not mentioned in Plaintiff's Brief) and a February 14, 2005 bone scan of Plaintiff's hands and wrists which Dr. Alperin interpreted as abnormal. As reflected in the administrative record, however, that bone scan was reported by Dr. Leon Dunn, the interpreting radiologist, to reflect "no evidence of increased or decreased uptake." (AR-LL-0131). Dr. Alperin's letter to Dr. Iyer on February 28, 2005 expresses his disagreement with the radiologist's impression, but provides no scientific basis for his contrary opinion.

A review of Dr. David Knapp's September 16, 2005 report reveals that he reviewed Plaintiff's medical records in detail. The report further indicates that Dr. Knapp spoke with Dr. Alperin by telephone, and that he was informed that Plaintiff continued to have multiple tender points on examination, joint tenderness in the hands and wrists and an elevated sedimentation rate. Based upon his review, Dr. Knapp concluded that there was no objective basis in the record to support the diagnosis of Rheumatoid Arthritis as a cause of Plaintiff's subjective complaints of hand and wrist pain. He found no evidence of severe active Rheumatoid Arthritis as a basis of disability. He specifically addressed the only objective medical evidence relied upon by Dr. Alperin in making his diagnosis. Dr. Knapp opined that "(a) bone scan is not routinely employed for the diagnosis of Rheumatoid Arthritis as it is non-specific in nature." Further, he concluded that "an elevated sedimentation rate is also non-specific in nature."

Dr. Knapp stated that the diagnosis supported by the medical evidence was fibromyalgia syndrome. He observed that a diagnosis of Rheumatoid Arthritis was not

9

supported by the physical findings, x-ray or laboratory results contained in Plaintiff's records. He further opined that the treatment plan for RA was not supported by the available medical evidence, and that the standard of care for the treatment of Rheumatoid Arthritis would include a diagnosis based upon objective findings rather than subjective complaints. He determined that "no objective findings specific for RA are noted in the available records." He ultimately determined that Plaintiff was able to perform the functions on her job description based upon the lack of objective findings to support the presence of inflammatory arthritis affecting her hands and wrists. (AR-LL-0297-0301). Based upon Dr. Knapp's report, Liberty Mutual determined that Plaintiff did not meet the plan definition of disability, and that benefits were no longer payable beyond September 20, 2005. Plaintiff was notified of that determination, and advised that she had the right to appeal. (AR-LL-0293-0294).

Plaintiff exercised her right of appeal, and Liberty Mutual referred her file to Dr. Jefrey D. Lieberman for a second file review and consultation. As reflected in his written report, Dr. Lieberman also reviewed Plaintiff's medical records in detail. (AR-LL-0054-0057). Like Dr. Knapp, Dr. Lieberman consulted with Dr. Alperin by telephone. Dr. Alperin expressed the opinion that Plaintiff had seronegative Rheumatoid Arthritis based on the distribution of her pain complaints as well as what Dr. Alperin felt was a positive bone scan report, despite the "normal" finding by the interpreting radiologist. Dr. Alperin also noted, once again, that Plaintiff had an elevated sedimentation rate. Dr. Alperin admitted, however, that he based his restrictions and capacity forms solely on Plaintiff's subjective symptoms, her pain responses on examination and her assessment of her own functional limitations. He admitted that Plaintiff exhibited no synovitis and that she did not respond

10

to Depo-Medrol injections as would be typical in a Rheumatoid Arthritis patient. (AR-LL-0057).

In the "Summary/Conclusions" portion of his report, Dr. Lieberman emphasized Dr. Alperin's admission that his diagnosis of seronegative Rheumatoid Arthritis was not based on objective findings beyond some elevated sedimentation rates and what he considered to be an abnormal bone scan. Dr. Lieberman further noted that Plaintiff had not responded to Azulfidine, and that she was unwilling to take oral steroids or Methotrexate. He noted that Plaintiff had not been using a TNF inhibitor. He mentioned Dr. Alperin's diagnosis of fibromyalgia as well, but noted that Dr. Alperin "feels that some of her pain symptoms are not consistent with that diagnosis."

Dr. Lieberman concluded that he could find no objective evidence in the record, or in his conversations with Dr. Alperin, that Plaintiff had any impairment that would prevent her from performing the duties of her occupation. "Specifically, there is no evidence in multiple evaluations from Dr. Alerpin and physical therapist of any synovitis or any joint damage on x-ray to preclude her from gainful employment in her occupation." (AR-LL-0058). Plaintiff's record revealed "only subjective symptomatology of pain, but no actual objective reproducible findings to confirm limitations or restrictions." (Id.). He emphasized once again that Dr. Alperin's restrictions and limitations on Plaintiff's activities were based upon her subjective symptoms, but not upon any objective finding of a functional deficit. He mentioned Dr. Alperin's disagreement with the interpreting radiologist as to Plaintiff's bone scan, but observed further that "bone scans are not reliable indicators of bilateral inflammatory arthritis." Dr. Lieberman found no objective evidence that would support the claimant's description of her capabilities and limitations. He further noted her resistance

11

to Dr. Alperin's treatment recommendations, including Methotrexate and intermittent oral steroid usage. He observed that Dr. Alperin was in the process of discontinuing Plaintiff's use of Azulfidine because it had not been beneficial. He also noted that Plaintiff was being treated with Cymbalta for fibromyalgia symptoms. With respect to that disease, he observed that Plaintiff's treatment should have included efforts to improve her sleep pattern and a low impact aerobic or aquatic exercise program. He also suggested Ultram, and indicated that other medications might be of benefit to Plaintiff if Cymbalta was not found to be effective. (AR-LL-0058-0059).

Plaintiff argues that Dr. Alperin's diagnosis of Rheumatoid Arthritis is supported by objective medical evidence, in the form of a positive bone scan of Plaintiff's hands and wrists. She maintains that Defendants' medical consultants ignored that evidence. That proposition, however, is demonstrably unfounded. Both Dr. Knapp and Dr. Lieberman addressed the bone scan evidence in their reports. Both opined that a bone scan is non-specific to a diagnosis of Rheumatoid Arthritis, and both noted that Dr. Aperin's assessment of Plaintiff's test result was contrary to the opinion of the interpreting radiologist. Drs. Knapp and Lieberman also considered the evidence of elevated sedimentation rates, each concluding that such results were also non-specific to a diagnosis of Rheumatoid Arthritis. It is quite apparent that both reviewing specialists considered the scientific evidence upon which Plaintiff relies, as well as the host of additional clinical and diagnostic test procedures which yielded entirely normal results. Drs. Knapp and Lieberman simply disagreed with the conclusions drawn by Dr. Alperin. It is worthy of note that the bone scan and sedimentation rate results upon which Plaintiff relies were received by Dr. Alperin while Ms. Goodwin was still employed, and several months before he determined that she was disabled. Defendant

Comerica observes that subsequent sedimentation rate results, received only a short time before Plaintiff's disability claim, were normal. (Comerica Brief, page 13; AR-LL-0087). Not only did Dr. Alperin fail to identify objective scientific evidence to support his May 2005 conclusion that Plaintiff was unable to work, he readily admitted that his decision was based entirely upon Plaintiff's subjective Complaints.

Plaintiff cites Glass v. Secretary of Health Education and Welfare, 517 F.2d 224, 225 (6th Cir. 1975) for the proposition that our Circuit "has found that subjective complaints of pain may be sufficient to support a claim of disability." (Plaintiff's Brief, page 8). That assertion overstates the holding of the cited case. The court in Glass based its decision upon the existence of a substantial objective basis for the claimant's subjective pain complaints, and not simply on the complaints themselves. Subsequent cases in our circuit have made it clear that subjective allegations of disabling pain are insufficient, by themselves, to support a claim for benefits. Sizemore v. Secretary of HHS, 865 F.2d 709, 713 (6th Cir. 1988). Pain alone can be disabling if it is severe enough to preclude all substantial, gainful activity, but the symptoms must be substantiated by some objective, clinical or laboratory findings. Hurst v. Secretary of HHS, 753 F.2d 517, 519 (6th Cir. 1985). A claimant has the burden of providing objective evidence confirming the severity of the alleged pain, or establishing that the medical condition is of such a kind and severity that it could reasonably be expected to produce the allegedly disabling pain. Duncan v. Secretary of HHS, 801 F.2d 847, 853 (6th Cir. 1986), McCormick v. Secretary of HHS, 861 F.2d 998, 1002-03 (6th Cir. 1988).

Plaintiff infers that Liberty Mutual's reliance upon the opinions of physicians who never examined Plaintiff, and who relied solely upon a review of records, renders the termination of Plaintiff's benefits arbitrary and capricious. I disagree. As pointed out in Comerica's Brief, the proposition that a treating physician's must be given determinative weight was rejected by the Supreme Court in The Black and Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003) ("nothing in the Act itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion."). In any event, a treating physician's opinions may be disregarded when they are unsupported by objective medical evidence. Neither Dr. Alperin nor Plaintiff has identified objective medical evidence subsequent to the early 2005 bone scan and periodic elevated sedimentation test results (at which time Plaintiff was still working) to explain Dr. Alperin's conclusion of disability in May 2005. On the contrary, Dr. Alperin has conceded that he filled out Plaintiff's disability forms based solely upon her subjective complaints.[3]

Plaintiff correctly observes that Dr. Alperin's clinical examination of Plaintiff revealed trigger points in 18 out of 18 areas associated with fibromyalgia. He addressed those findings in correspondence with Dr. Iyer. At no time, however, did Dr. Alperin, or any other physician, express the opinion that Plaintiff's fibromyalgia was disabling. In fact,

---

[3] Plaintiff relies upon Judge Lawson's opinion in Clark v. AETNA Life Insurance Co., (JA-LL-201-234) for the proposition that subjective complaints of pain can be sufficient to establish disability under the terms of an ERISA plan. As pointed out by Comerica, however, Clark was decided under a de novo standard of review. To the extent that the Clark judgment can be read as support for the proposition that subjective complaints, standing alone, are sufficient to establish disability, I simply disagree with it.

fibromyalgia was not listed by Dr. Alperin in the "diagnosis and concurrent conditions . . ." section of the Restrictions Form submitted in May 2005. (AR-LL-0190). Nor did it appear on the similar forms submitted in June, July and August 2005. (AR-LL-0174, 0187). Having neglected to rely upon fibromyalgia as a basis for disability throughout the administrative stages of her benefit's claim, Plaintiff appears to be attempting to rely upon it as a basis for reversing the plan administrator's decision. Such a course is both procedurally and substantively defective.

     Dr. Knapp's report indicated that a diagnosis of fibromyalgia syndrome was supported by medical evidence. (AR-LL-0299). Dr. Lieberman's report documented Dr. Alperin's statement to him that Plaintiff had fibromyalgia, but that "some of her pain symptoms are not consistent with that diagnosis." (AR-LL-0058). Later in his report, Dr. Lieberman opined that, if Plaintiff had fibromyalgia, her treatment plan should have focused on improving Plaintiff's sleeping patterns and a program of low impact exercise, rather than Dr. Alperin's resort simply to Cymbalta. (AR-LL-0059). The mere fact that Defendants' reviewing physicians did not reject Dr. Alperin's fibromyalgia diagnosis does not render the plan administrator's decision arbitrary or capricious. As stated above, Dr. Alperin did not rely upon fibromyalgia in the form reporting his opinion that Plaintiff was unable to work. In fact, Dr. Alperin <u>never</u> opined that Plaintiff's fibromyalgia was disabling. It is insufficient for a claimant simply to establish a diagnosis of a medical condition. Rather, it is incumbent upon her to prove that the condition was disabling at the relevant time period. <u>Higgs v. Bowen</u>, 88 F.2d 860, 863 (6th Cir. 1988); <u>Foster v. Bowen</u>, 853 F.2d 483, 489 (6th Cir. 1988). There is authority for the proposition that fibromyalgia is a condition which is not automatically disabling. See, <u>Sarchet v. Chater</u>, 78 F.3d 305, 307 (7th Cir. 1996) ("some

people may have such a severe case of fibromyalgia as to be totally disabled from working, . . . but most do not . . ..").  Dr. Alperin's comment to Dr. Lieberman that Plaintiff's pain complaints were not entirely consistent with a diagnosis of fibromyalgia suggests that he entertained some doubts on the subject.  His correspondence with Dr. Iyer on June 3, 2005, indicates that Dr. Alperin considered Plaintiff's fibromyalgia to be a secondary condition.  (AR-LL-0189).  That conclusion is further buttressed by Dr. Lieberman's observation that, to the extent Plaintiff had fibromyalgia, Dr. Alperin's treatment plan was insufficient to deal with it.

In addition to Dr. Alperin's report that Plaintiff had complained of pain in areas not associated with fibromyalgia, there are other indications in the record tending to undermine the credibility of her subjective complaints.  As noted in Comerica's Brief, Ms. Goodwin failed to follow Dr. Alperin's treatment recommendations on at least two occasions.  She abandoned a prescribed program of occupational therapy designed to allow her to return to work without restriction.  After only four sessions, she simply stopped attending, and was dropped from the program.  (AR-LL-0183-0185).  Even earlier than that, she had stopped taking the Methotreaxate prescribed by Dr. Alperin, claiming that it induced chest pain.  She refused to resume the medication despite the doctors assurances that it was the most effective medicine for Rheumatoid Arthritis, and that it was not associated with chest pain as a side effect.  She refused even though testing and examinations had revealed no heart or lung abnormalities.  (AR-LL-0075, 0076, 0127, 0186, 0192, 0194, 0197).  The record reflects that Plaintiff had complained of chest pains prior to her use of Methotreaxate.

There are other examples of questionable complaints by Ms. Goodwin.  Dr. Alperin prescribed Cymbalta for her fibromyalgia in August 2005.  (AR-LL-0180).  In October 2005,

16

she complained that, when using the Cymbalta and Sulfasalazine, she developed a rash on her hands. Neither Dr. Alperin nor a dermatologist observed the rash. (AR-LL-0176). Plaintiff's occupational therapist reported that her complaints of constant upper extremity pain at 8/10 on the left and 9/10 on the right were out of proportion to her activities. Plaintiff complained that her hands were frequently edematous. The therapist reported, however, that her hands did not appear to be edematous.

Viewing Plaintiff's medical evidence in its entirety, I conclude that Dr. Alperin's diagnosis of totally disabling Rheumatoid Arthritis was open to legitimate question. Defendants submitted all of the available medical evidence for review by two board certified rheumatologists. Each consulting physician determined that the objective medical evidence failed to establish the existence of a condition of sufficient severity to preclude Plaintiff's performance of the essential functions of her job. The termination of Plaintiff's short term disability benefits was based upon those reports. Having examined the administrative record, I am satisfied that the decision to terminate short term benefits was neither arbitrary nor capricious. Defendants' reviewing specialists cited specific scientific reasons for their conclusions that Plaintiff's diagnosis of totally disabling RA was not supported by the record. There was no evidence of synovitis. Plaintiff had not responded to Depo Medrol. Dr. Alperin's interpretation of the bone scan was contradicted by the interpreting radiologist. Even if it had been unequivocal, the specialists considered such a test non-specific to Rheumatoid Arthritis. They held the same view as to Plaintiff's periodically elevated sedimentation rates. Plaintiff's STD benefits claim was not based upon a diagnosis of fibromyalgia. Nor did Dr. Alperin opine that she was unable to perform her job functions due to that disease. The mere diagnosis of an illness does not establish disability. Drs.

17

Knapp and Lieberman provided specific and persuasive evidence that Plaintiff did not qualify for benefits under the Short Term Disability Plan, and the plan administrator was entitled to rely on it. The fact that Dr. Alperin may disagree does not render the decision unreasonable. Bolling v. Eli Lilly & Co., 990 F.2d 1028, 1029-30 (8th Cir. 1993). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Finance Co. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989), cert. denied, 495 U.S. 905 (1990).

### 3. **Plaintiff's Common Law Claims**

Plaintiff's verified Complaint asserts common law claims for breach of contract and promissory estoppel. (Verified Complaint, Counts I and II). Both of those claims, however, plainly arise from the denial of Plaintiff's short term disability benefits claim. Defendant Liberty Mutual correctly argues that virtually all state law claims relating to an employee benefit plan are preempted by ERISA. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48 (1987) (common law claims for breach of contract, fraud, bad faith and breach of fiduciary duties based on alleged improper processing of claims under ERISA plan are preempted); Smith v. Provident Bank, 170 F.3d 609, 613-617 (6th Cir. 1999) (ERISA preempts common law claims for breach of contract, bad faith, misrepresentation, conversion and negligence because claims "relate to" employee benefit plan). Because Plaintiff's claims for breach of contract and promissory estoppel are based upon the denial of disability benefits under the Comerica Short Term Disability Benefits Plan, they "relate to" an employee benefit plan under ERISA, and are thus preempted by that statute. Accordingly, Plaintiff's claims in Counts I and II of the Verified Complaint should be dismissed.

For all of the above reasons, I recommend that Plaintiff's Motion to Reverse the Administrator's Decision be denied; that the opposing motions of the defendants be granted; and that the Complaint be dismissed.

III. **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer  
DONALD A. SCHEER  
UNITED STATES MAGISTRATE JUDGE

DATED: July 25, 2007

_____

### CERTIFICATE OF SERVICE

      I hereby certify on July 25, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 25, 2007. **None.**

                                                  s/Michael E. Lang
                                                  Deputy Clerk to
                                                  Magistrate Judge Donald A. Scheer
                                                  (313) 234-5217